No. 24-176, *In re:M.B.*

**FILED**
**November 13, 2025**
**released at 3:00 p.m.**
C. CASEY FORBES, CLERK
SUPREME COURT OF APPEALS
OF WEST VIRGINIA

HUTCHISON, Senior Status Justice, concurring in the result:

Like my colleagues, I concur with the result in this case that the circuit court's order on the placement of M.B. should be affirmed. As you can see, though we all agree with that result, there is a great divergence of opinion among the members of this Court as to why the circuit court should be affirmed. Here is how I view this case.

M.B. has lived with an Amish foster family since his birth in May 2023. His three siblings were the subject of a separate abuse and neglect proceeding and also live with the Amish foster family. In fact, M.B.'s siblings have all been adopted by the Amish foster family. Even so, M.B.'s guardian ad litem filed a motion to change his placement, listing a myriad of reasons why she believed his placement was not in his best interest. The issues raised in that motion were: 1) that the foster mother had induced lactation and the guardian found that to be objectionable; 2) that M.B.'s only mode of transportation would be horse and buggy; and, 3) that it was not in M.B.'s best interest to remain in an Amish home because a) the child is not Amish, b) he would travel solely by horse and buggy, c) he would not attend public school but an Amish community school until he was 13, and, d) there is no medical doctor in the Amish community.

1

In ruling upon the guardian ad litem's motion, it is clear the circuit court went to extraordinary lengths to reach its conclusion that the placement in the Amish foster home was in M.B.'s best interest. It appointed a Special Commissioner who delivered two reports to the circuit court. It ordered both the guardian ad litem and the DHS to submit briefing on their respective positions regarding M.B.'s placement. It conducted an evidentiary hearing in which the Amish foster father testified. Finally, it rendered an order that carefully examined the issues and concluded that it was in the best interest of M.B. to remain in the foster placement.

The circuit court got it right. West Virginia Code § 49-4-111 sets forth the mechanism to remove a child from its foster placement:

> (b) When a child has been placed in a foster care arrangement for a period in excess of eighteen consecutive months, and the department determines that the placement is a fit and proper place for the child to reside, the foster care arrangement may not be terminated unless the termination is in the best interest of the child and:
> (1) The foster care arrangement is terminated pursuant to subsection (a) of this section;[1]

---

[1] Subsection (a) applies in cases where allegations of abuse or neglect have been made against a foster placement. There were no such allegations here. In fact, the circuit court's special commissioner stated that:

> If [M.B.] remains with this family permanently, he will grow up in a loving and spiritual home with his three biological sisters, he will be part of a large extended family, he will learn a trade, he will learn valuable home and work skills, he will

(2) The foster care arrangement is terminated due to the child being returned to his or her parent or parents;

(3) The foster care arrangement is terminated due to the child being united or reunited with a sibling or siblings;

(4) The foster parent or parents agree to the termination in writing;

(5) The foster care arrangement is terminated at the written request of a foster child who has attained the age of fourteen; or

(6) A court orders the termination upon a finding that the department has developed a more suitable long-term placement for the child upon hearing evidence in a proceeding brought by the department seeking removal and transfer.

W. Va. Code § 49-4-111(b). Not only does this code section require a best interest of the child analysis, but so does our case law. This Court has repeatedly held that "the primary goal in cases involving abuse and neglect, as in all family law matters, must be the health and welfare of the children." Syl. Pt. 3, in part, *In re Katie S.*, 198 W.Va. 79, 479 S.E.2d 589 (1996). "In a contest involving the custody of an infant the welfare of the child is the polar star by which the discretion of the court will be guided." Syl. Pt. 3, *In re S.W.*, 233 W. Va. 91, 755 S.E.2d 8 (2014) (citation omitted).

Here, the DHS initially determined that the foster placement was a fit and proper place for M.B. to reside. Likewise, after the guardian ad litem raised her objection,

---

learn to be a productive and independent citizen, he will receive a basic education through eighth grade, he will be able to support himself and a family, and he will be part of a close and mutually-beneficial spiritual community.

the circuit court meticulously examined the evidence and concluded that the best interest of M.B. demanded that he remain in his foster placement. Given the procedural posture, that was the correct determination. There was no showing by anyone establishing that it was in M.B.'s best interest to remove him from his foster home or that any of the other statutory requirements of West Virginia Code § 49-4-111 were present. Further, under the statutory framework for adoptions, the questions regarding permanent placement are left to the adoptive court. *See* W. Va. Code § 48-2-701(a).[2]

Accordingly, I would affirm the circuit court solely on the fact that it was in M.B.'s best interest to remain in his foster placement.

---

[2] This code section provides:

> (a) When the cause has matured for hearing but not sooner than six months after the child has resided continuously in the home of the petitioner or petitioners, the court shall decree the adoption if:
> (1) It determines that no person retains parental rights in such child except the petitioner and the petitioner's spouse, or the joint petitioners;
> (2) That all applicable provisions of this article have been complied with;
> (3) That the petitioner is, or the petitioners are, fit persons to adopt the child; and
> (4) That it is in the best interests of the child to order such adoption.

W. Va. Code § 48-22-701.

4